UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| COURTNEY MEANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-489-PLR-CCS |
| | ) | |
| DEBRA JOHNSON, Warden; SGT. | ) | |
| EPLEY, Disciplinary Hearing Officer; | ) | |
| DUSTIN MACKIN, Internal Affairs; | ) | |
| MICHAEL SMITH, Unit Mgr,; MR. | ) | |
| HINSON, Capt.; RANDY SMITH, | ) | |
| Corporal; HORACE WARDEN, Corporal; | ) | |
| MR. McCALLISTER, Warden; R. | ) | |
| GENTRY, Corr. Officer; MR. JULIAN, | ) | |
| Warden; ROBERT GIBSON, Capt.; RICKY | ) | |
| BUNCH, Unit Mgr.; WARREN RIGGINS, | ) | |
| Counselor; SAM CRASS, Counselor; | ) | |
| DIANE GILMORE, Counselor; SHAWN | ) | |
| PHILLIPS, Warden; DAVID SEXTON, | ) | |
| Warden; DERRICK SCHOFIELD, | ) | |
| Comm'r; MR. HOUSTON, Corporal; and | ) | |
| MR. ALEXANDER, Corr. Officer, | ) | |
| | ) | |
| In their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM and ORDER**

Acting pro se, Courtney Means, a state inmate who is now confined in the Morgan County Correctional Complex ("MCCX"), brings this fee-paid civil rights complaint for injunctive, declaratory, and monetary relief under 42 U.S.C. § 1983 against twenty Defendants, who are officials or employees of the Tennessee Department of Correction at three different state prisons [Doc.1]. All Defendants are sued in their individual capacities [*Id*. p.3]. Because Plaintiff is attempting to join multiple Defendants and unrelated claims in violation of Rule 20 of

the Federal Rules of Civil Procedure, the Court addresses first the improperly-joined claims and Defendants before screening the complaint pursuant to 28 U.S.C. § 1915A.

## I.     MISJOINDER OF PARTIES AND CLAIMS

The complaint contains extremely detailed facts surrounding the events out of which arose Plaintiff's six numbered claims (labeled "Counts" in the pleading). Each claim is alleged against a different group of Defendants.

In claim one, Plaintiff charges that Defendants Sgt. Epley, Dustin Mackin, Debra Johnson, and Derrick Schofield did not afford him the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), in connection with disciplinary proceedings conducted at the Turney Center Industrial Complex (TCIX") in Only, Tennessee [*Id*. at 10]. Defendants Epley, Mackin, and Johnson are TCIX officials or officers and Defendant Schofield is the former Tennessee Department of Correction ("TDOC") Commissioner.

In claim two, Plaintiff asserts that he was not provided the *Wolff* procedures and the protections of TDOC Policy No. 404.10 when he was placed in administrative segregation. Five Defendants are tied to this claim: TCIX Defendants Epley and Johnson and Defendants Randy Smith, Warden Julian, and Warden McCallister, an officer and two wardens at the Northeast Correctional Complex ("NECX") in Mountain City, Tennessee.

Claim three is a two-part retaliation claim. The first part of the claim involves allegations that Plaintiff was retaliated against for engaging in litigation and that the retaliatory acts consisted of confiscation of his property; deprivation of hygiene products, showers, and recreation; and verbal harassment and threats. The second part of this claim embraces contentions that Plaintiff was transferred from NECX to MCCX to retaliate against him for filing

2

grievances. Defendants named as wrongdoers in claim three are all NECX officials or officers: Defendants Smith, Julian, McCallister, Captain Hinson, Horace Warden, and R. Gentry.

Plaintiff asserts in claim four that he was not afforded a meaningful review of his status while in administrative segregation. The Court notes that, in this claim, Plaintiff does not challenge his original placement in administrative segregation. Claim six alleges that he was subjected to excessive force. Claims four and six are asserted against Defendants who work at MCCX. These two claims against these MCCX Defendants will be screened as they are properly joined in the complaint. Claim five is somewhat related to Claim four and, though it is asserted against TDOC Commissioner Schofield and not against an MCCX Defendant, the Court will screen it along with claims four and six. Claim seven, which asserts that all Defendants named in the lawsuit acted with deliberate indifference, will likewise be screened, but only as it relates to the MCCX Defendants

Rule 20 of the Federal Rules of Civil Procedure permits the joinder of defendants only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Rule 20(a)(2)(A) & (B). Rule 20, however, does not permit the joinder of unrelated claims and defendants in one lawsuit. *George v. Smith*, 507 F.3d 605 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fee–for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may field without prepayment of the required fees.").

3

Plaintiff's claims regarding his disciplinary hearing at the TCIX (claim one), his placement in administrative segregation at the TCIX (claim two), the retaliatory conduct and transfer which occurred at the NECX (claim three), and deliberate indifference alleged against non-MCCX Defendants (claim seven [part]) do not relate to his claims that he was denied meaningful review of his status on administrative segregation and subjected to excessive force at the MCCX. Nor has Plaintiff asserted these particular claims against any named MCCX Defendant. This means that Plaintiff has not connected at least one of the aforementioned claims for relief to each Defendant or shown that these particular claims for relief arise "out of the same transaction or occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R.Civ.P. 20(a)(2).

Accordingly, pursuant to Rule 21 of the Federal Rules of Civil Procedure, which authorizes the Court to "drop a party[,]" Defendants Debra Johnson, Sgt. Epley, Dustin Mackin, Michael Smith, Mr. Hinson, Horace Warden, Mr. McCallister, R. Gentry, and Mr. Julian and any and all claims against them are **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to file separate complaints against them. *See* 4 Moore's Federal Practice § 21.03 (Matthew Bender 3d ed.) ("Dismissal of a misjoined party under Rule 21 is without prejudice; a claim by or against such a party may be refiled as a separate suit."); *Letherer v. Alger Group., L.L.C.*, 328 F.3d 262, 266-68 (6th Cir. 2003) (affirmed dropping of misjoined party and dismissing claims alleged against the party), *recognized as overruled on other grounds in Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F3d. 633, 636 (6th Cir. 2008); and *Michaels Bldg. Co. V. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) (noting that the "dismissal of claims against misjoined parties is appropriate").

4

The Clerk is **DIRECTED** to send Plaintiff the proper forms, including two applications to proceed *in forma pauperis*, to file separate § 1983 complaints against the dismissed Defendants, if he so chooses.

## II. SCREENING

The Court must now review the complaint as it now stands to determine whether the pleading states a claim entitling Plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.[1] If so, this suit must be dismissed. In performing this task, the Court bears in mind the rule that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure state a claim under [§ 1915A(b)(1)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23

---

[1] Because Plaintiff paid the filing fee, the screening procedures in 28 U.S.C. § 1915(e)(2), which apply to prisoners who are proceeding *in forma pauperis*, do not apply to him. *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). However, the screening provisions in § 1915A, which do apply to him, are identical to those in § 1915(e)(2), meaning that the outcome would be the same under either statute.

5

F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). *See also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

The Court examines claims four, five, six, and part of seven under these guidelines.

### A. Claim Four

#### 1. The Allegations

In claim four, Plaintiff asserts that he was placed in administrative segregation at the NECX and that, upon his transfer to MCCX on February 6, 2015, he continued to be housed in administrative segregation [*Id*. at 6-7]. Plaintiff asked MCCX Counselor Riggins why Plaintiff was on "max" and he told Riggins that the explanation needed to be in writing. Riggins showed Plaintiff a print-out of a contact note entered at NECX, but he would not give Plaintiff a copy of the print-out. On February 11, 2015, Riggins conducted an administrative segregation review of Plaintiff's housing placement [*Id*. at 7].

Dissatisfied with the course of his dealings with Defendant Riggins and feeling mislead by MCCX staff members, Plaintiff wrote two letters to Defendant TDOC Commissioner Derrick Schofield, explaining the problems he was encountering with regard to his placement in administrative segregation. Plaintiff also discussed his administrative segregation placement with MCCX Wardens David Sexton and Shawn Phillips. On March 4, 2015, Riggins handed Plaintiff an administration segregation placement sheet, which Plaintiff soon discovered was inaccurate and fabricated and which seemed to him to be an attempt to cover up official misconduct. Plaintiff called the inaccuracies to Defendant Captain Gibson's attention, and the placement sheet was replaced.

6

Plaintiff maintains that since February, MCCX has failed to conduct a meaningful review of his status on administrative segregation. Plaintiff further maintains that he knows that he was not provided a meaningful review of his administrative segregation status because he is still on "max," obviously implying that a meaningful review of his segregated confinement would have resulted in his release from maximum security [*Id*. at 8-9].[2] Plaintiff complains that his maximum security designation will affect his parole eligibility [*Id.*].

The Court infers that Plaintiff is asserting that his right to due process of law, as guaranteed by the Fourteenth Amendment, was violated by the failure to provide a meaningful review of his continued retention on administrative segregation.

**2. Law and Analysis**

The Due Process Clause in the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. A procedural due process claim under the Fourteenth Amendment "depends on the existence of a constitutionally cognizable liberty or property interest with which the state has interfered." *Manning v. Unknown Parties*, 56 F. App'x 710, 711 (6th Cir. 2003) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 4690 (1989)). Thus, Plaintiff must show that his interest in having a meaningful review of his continued administrative segregation is a protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or

---

[2] An explanatory note seems appropriate at this juncture. According to the Tennessee Department of Correction "Administrative Policies and Procedures, Housing Assignments" Policy # 506.14, the term, "Maximum Security Administrative Segregation" is defined as "[t]he purposeful separation of inmates which are a threat to the safety and security of an institution, the welfare of staff, inmates, or public due to past or current acts of violence and/or escape." *See* online https://www.tn.gov/assets/entities/correction/attachments/506-14.pdf (last visited Aug. 12, 2016). In his pleading, Plaintiff employs the phrase "administrative segregation" interchangeably with the word "max;" both apparently are references to his housing assignment.

property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.").

The Due Process Clause itself confers no liberty interest "in avoiding transfer to more adverse conditions of confinement." *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *see Martucci v. Johnson*, 944 F.2d 291, 294 (6th Cir. 1991) ("The federal Constitution, standing alone, does not confer upon prisoners a 'liberty interest' in any particular form of confinement."). Yet "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations," where the confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U. S. at 484 (citing *Sandin v. Conner*, 515 U.S. 472, 483- 84 (1995)).

The Sixth Circuit has stated that "administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*"); *but see Harden-Bey v. Rutter*, 524 F.3d 789, 792, 795 (6th Cir. 2008) (finding that 3 years' confinement in an indefinite placement on administrative segregation, given "the nature and duration of [] inmate's segregation," could constitute an atypical and significant hardship).

Here, Plaintiff alleges that, on February 3, 2015, he was placed on administrative segregation at NECX [Doc. 1 p. 6]. On February 6, 2015, Plaintiff was transferred to MCCX. As of November 2, 2015, the date this complaint was filed, Plaintiff had been in administrative

8

segregation just shy of 9 months. Plaintiff has not described anything approaching an atypical and significant hardship with respect to his confinement in administrative segregation at MCCX. Indeed, he indicates that the duration of his confinement is definite, in that it is intended to be 18 months [*Id*. at 70].

It is important to note that Plaintiff does not contend that the MCCX Defendants wrongfully placed him in administrative segregation, but instead that they failed to conduct a meaningful review of his placement, after he was placed in administrative segregation. However, since Plaintiff has not shown that his confinement in administrative segregation at MCCX constituted an atypical and significant hardship, he has not demonstrated that he had a cognizable liberty interest which called for procedural protections. *Cf. Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012) (finding that an inmate was entitled to a meaningful periodic review of that confinement, based on the assumption that his lengthy confinement in administrative segregation constituted an atypical and significant hardship) (citing *Hewitt v. Helms,* 459 U.S. 460, 477, n.9 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. at 483); *Jones v. Raye*, No. 12-6568, 2014 WL 10319865, at *2 (6th Cir. June 3, 2014) ("Where the placement in administrative segregation continues for several years, due process requires that the prisoner receive meaningful, periodic reviews and that the continuance of segregation be supported by some evidence."); *Harris v. Caruso*, 465 F. App'x. 481,484 (6th Cir. 2012) (finding that due process requires a periodic review of confinement for inmate's atypical 8-year placement in administrative segregation).

Even if Plaintiff possessed a liberty interest involving his then nine-month's confinement in administrative segregation, on February 11, 2015, five days after his transfer to MCCX, Defendant Warren Riggins conducted an administrative segregation review [*Id*. at 6-7]. Plaintiff

9

also states, in a grievance he attached, that he spoke with the "IAS Board" during his "monthly review" on May 21, 2015, and that his administrative segregation placement sheet reflected that he had participated in gang activity [*Id*. at 70]. Furthermore, Plaintiff has also attached a copy of an inmate inquiry-information request he submitted to the prison authorities, in which he questions the reasons for his placement [*Id*. at 76]. The response to this inquiry was that Plaintiff's maximum security placement was "due to [his] extensive disciplinary history and STG involvement, assault history" [*Id.* at 76]. Clearly, MCCX prison authorities reviewed Plaintiff's administrative segregation placement and informed him as to the reason for his placement.

The final aspect of this claim is Plaintiff's assertion that his placement in administrative segregation will affect his parole eligibility date. However, the Sixth Circuit has stated: "The fact that the administrative segregation placement may have a negative implication on [the plaintiff's] opportunity to . . . meet the parole board is a collateral consequence of [the plaintiff's] placement in administrative segregation that is insufficient to create a liberty interest." *Randolph v. Campbell*, 25 F. App'x 261, 263 (6th Cir. 2001) (citing *Sandin*, 515 U.S. at 487); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995). The Court concludes that Plaintiff's eligibility for parole is not a liberty interest, which warrants due process protections.

Plaintiff fails to state a due process claim in connection with his administrative segregation confinement in MCCX.

### B. Claim Five

#### 1. The Allegations

Plaintiff asserts that evidence shows that Defendant Schofield knew that his subordinates were engaging in conduct which resulted in constitutional violations but that Defendant Schofield failed to take any action to prevent that conduct. Plaintiff alleges that Defendant's

knowledge of the conduct and his concomitant failure to act establishes an affirmative link between Defendant Schofield and Plaintiff's continued administrative segregation.

### 2. Law and Analysis

This claim is legally insufficient in numerous ways. First, it is clear to the Court that Plaintiff is basing his claim on a theory of respondeat superior. This theory is not a cognizable basis of liability in a § 1983 case. The law is settled that § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995).

Furthermore, the Court has found that Plaintiff has not alleged any due process violations in connection with his confinement in administrative segregation. No action need be taken to prevent conduct which is not unconstitutional.

Finally, supervisors cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Plaintiff fails to state a claim against Defendant Schofield.

## C. Claim Six

### 1. The Allegations

Plaintiff maintains that, on October 9, 2015, Defendants Houston and Alexander and Officer Goines entered Unit 24 pod, where Plaintiff was housed. Plaintiff contends that immediately thereafter, Defendant Houston stated to Plaintiff: "You better close that flap before I make it up there or you gonna regret it" [*Id.* at 9]. Defendant Houston and Plaintiff engaged in an adversarial conversation and, when Plaintiff realized that the disagreement was stalemated, he

asked to speak with the officer in charge of Unit 24. At this point, Defendant Houston grabbed Plaintiff's arm, bent it, acted as though he was trying to push it back away from the flap, though Plaintiff perceived that Defendant "really was purposely trying to hurt" him, and ordered Defendants Alexander and Officer Goines to help break him Plaintiff's arm [*Id.*]. Defendant Alexander participated in what Plaintiff characterizes as an assault, but Officer Goines did not join in the struggle, which lasted for three minutes, until a superior officer was called into the pod.

Plaintiff alleges that a policy requires that a use of force report be completed immediately after force is used on an inmate and that an inmate must receive medical care. The policy was violated in regard to this incident and Plaintiff concludes that the policy was not followed for the purpose of engaging in a cover up of the incident. Plaintiff maintains that he intended to ignore what had happened but, after taking 600 mg of ibuprofen and applying an analgesic balm to his arm, the arm pain remained for several days [*Id*. at 9-10]. Plaintiff decided to file a grievance about the incident [*Id.*] [3] and, obviously, to pursue a claim arising from the incident in this federal lawsuit. Plaintiff suggests that, "even though he did not suffer serious injury," he still has an actionable Eighth Amendment claim.

**2. Law and Analysis**

The Eighth Amendment protects prisoners against the imposition of "cruel and unusual punishment," and the use of excessive force against prisoners may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). However, not every use of intentional force upon a prisoner by a prison official will rise to the level of an Eighth Amendment violation.

---

[3] Plaintiff refers the Court to "Exhibit # 17" [Doc. 1 p.10], which presumably consists of a copy of the grievance, but he did not submit a document labeled "Exhibit # 17." Plaintiff filed only sixteen exhibits in support of his complaint [*Id*. at 12- 82].

12

*See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) ("[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment.") (citations omitted).

An Eighth Amendment claim is comprised of both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 833-36 (1994). The objective element of the claim requires plaintiff to show a "sufficiently serious" deprivation, *id*. at 834, (i.e., that the force was "harmful enough" to establish a constitutional violation). The subjective inquiry is focused on whether a defendant possessed a culpable state of mind. In the context of excessive force, the question is one of a defendant's intent—whether a defendant used force in a good faith effort to restore order or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 6-7; *Whitley v. Albers*, 475 U.S. 312, 320 (1986). Thus, plaintiff needs to produce evidence that the force was "harmful enough to establish a constitutional violation" and applied "maliciously and sadistically to cause harm" rather than in a "good faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 7-8.

Excessive force claims, as *Hudson* directs, must be decided "based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). As the Sixth Circuit has explained, the extent of the injury is not the central issue in a claim for excessive force, but rather "whether gratuitous violence has been inflicted." *Coley v. Lucas Cnty.,Ohio,* 799 F.3d 530, 539 (6th Cir. 2015) (citations and internal quotation marks omitted) Still, "the extent of injury may suggest whether the use of force could plausibly have been thought necessary . . . [and] provide some indication of the amount of force applied," even though "[i]njury and force . . . are only imperfectly correlated." *Wilkins*, 559 U.S. at 37-38. But, it remains that a prisoner's complaint "of a push or shove that causes no discernible injury almost

13

Case 3:15-cv-00489-PLR-CCS   Document 7   Filed 08/16/16   Page 13 of 16   PageID #: 126

certainly fails to state a valid excessive force claim." *Id*. at 38 (citations and internal quotation marks omitted).

So it is here. At most, Plaintiff's arm was bent and pushed, but not "every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386 (1989). Indeed, "the occasional use of a degree of intentional force" may be required or justified by officers charged with controlling large groups of prisoners, who are not known to be the "most gentle or tractable of men." *Id*.

Defendants did not engage in the physical encounter with Plaintiff gratuitously but, based on the allegations presented by Plaintiff, for the purpose of enforcing the order to Plaintiff to close the flap in his cell door. Clearly, the security of a correctional facility would be seriously compromised if inmates were permitted to disobey orders from correctional officers, without any attempt being made to secure inmates' compliance with those orders.

Furthermore, Plaintiff's alleged injury appears to have been, at most, a de minimis injury. Plaintiff acknowledges that he did not suffer serious injury [*Id*. at 11] and that his injury consisted only of several days of pain. Plaintiff has not alleged that he requested medical care, though he complains that a policy required that he receive such care. The Court concludes that, on the basis of Plaintiff's own allegations, he has not shown that the force was "harmful enough to establish a constitutional violation."

Therefore, aside from Plaintiff's speculation that Defendant Houston "really was purposely trying to hurt" him, Plaintiff has presented nothing to show that the Defendant Houston or Defendant Alexander possessed the requisite culpable state of mind, to wit, that the

14

complained of incident ensued from a malicious and sadistic intent to harm him, rather than from conduct intended to achieve a legitimate purpose.

Having failed to establish either component of an Eighth Amendment claim, Plaintiff fails to state a claim of excessive force against these two Defendants.

Finally, Plaintiff's contention that Defendants ignored a policy, which required that, following any use of force against an inmate, a use of force report be prepared and the inmate receive medical care, does not state a § 1983 claim. This is so because a mere violation of a prison policy does not rise to the level of a due process violation protected by the United States Constitution. *See Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994) (State authorities "may have been required to follow their own procedural statutes and regulations on parole . . . as a matter of state law, but there is not now any viable legal theory by which [] state authorities are required to follow such procedural rules as a matter of federal due process."); *see also Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable.").

Since "[a] state statute cannot create a federal constitutional right," *Harrill v. Blount County, Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995), by logical extension, neither can a state prison policy (unless it violates the standard enunciated in *Sandin v. Conner*, 515 U.S. 472, 848 (1995) (due process violation only when an atypical and significant hardship imposed on prisoner which is not a usual incident of prison life.)).

**E. Claim Seven**

15

This claim is stated in its entirety: "All officials acted with the requisite intent, all having a sufficiently culpable state of mind" [*Id*. at 11]. A plausible claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because Plaintiff's claim consists only of a bald assertion of the state-of -mind element of an Eighth Amendment claim, without anchorage to any underlying factual allegations, he has failed to state a claim which would entitle him to relief under § 1983.

## IV. CONCLUSION

Based on the above discussion, Plaintiff has failed to state viable § 1983 claims against any remaining Defendant. Accordingly, this case will be dismissed sua sponte under 28 U.S.C. § 1915A.

All pending motions are **DENIED** as **MOOT**.

Finally, the Court has carefully reviewed this case pursuant to 28 U.S.C. § 1915(a)(3) and hereby **CERTIFIES** that any appeal from this action would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal from this decision, he must also submit either: (a) the $505.00 appellate filing fee or (b) a motion for leave to appeal *in forma pauperis*, his financial affidavit, and a certified copy of his inmate trust fund showing the transactions in the account for the last six months. 28 U.S.C. § 1915(b)(1).

**AN APPROPRIATE ORDER WILL ENTER**.

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**